**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**NORTHERN DIVISION**

| | |
|---|---|
| **CHESLEY L. MARTIN,**<br><br>              **Plaintiff,**<br><br>**vs.**<br><br>**WORLD MARKETING ALLIANCE, INC., a foreign corporation; WMA SECURITIES, INC., a foreign corporation; MELVIN H. BELL aka MEL H. BELL, an individual; JIM GILLAND, an individual, and JOHN DOES 1 THROUGH 10,**<br><br>              **Defendants.** | **MEMORANDUM DECISION AND ORDER**<br><br><br>**Case No.  1:04CV124 DAK** |

This matter is before the court on (1) Defendant  Bell's  Motion for Summary Judgment, which has been joined in by Defendants World Marketing Alliance, Inc. ("WMA"), WMA Securities, Inc. ("WMAS"), and Jim Gilland; and (2)  Defendant Bell's Motion to Strike Chesley L. Martin's Affidavit, which also has been joined in by Defendants WMA, WMAS,  and Mr. Gilland.  A hearing on the motions was held on August 8, 2007.  At the hearing, Plaintiff Chesley L. Martin ("Mr. Martin") was represented by J. Ryan Mitchell.  Defendant Melvin H. Bell ("Mr. Bell") was represented by Sean N. Egan.   WMA, WMAS, and Jim Gilland ("Mr. Gilland") were represented by Heidi G. Goebel and Craig Wentz.   Before the hearing, the court carefully considered the memoranda and other materials submitted by the parties.  Since taking the matter

under advisement, the court has further considered the law and facts relating to these motions.

Now being fully advised, the court renders the following Memorandum Decision and Order.

## BACKGROUND

In February 2000, Mr. Martin retired from Chevron Oil Company where he had spent

nearly thirty years working as a refinery operator.  During his employment with Chevron, he had

saved over $716,000 through his company-sponsored 401K plan and his company pension.  This

$716,000 was Mr. Martin's nest egg and was the only asset he had, other than his home, to fund

his retirement

To manage and invest his retirement, Mr. Martin hired Defendants Melvin Bell and Jim

Gilland, registered securities brokers for Defendants World Marketing Alliance, Inc. ("WMA")

and WMA Securities, Inc. ("WMAS").   Mr. Gilland was the father-in-law of Mr. Martin's son,

Jared Martin, who had just become an associate at WMA and WMAS.

In his meetings with Mr. Bell and Mr. Gilland, Mr. Martin informed them that this was

the only money he had to fund his retirement and that he was an unsophisticated investor with no

experience investing in the stock market.  He further told them he would have to rely on their

professional experience and advice as to how to properly invest his retirement.   He also

explained to them that his main concern was protection and that he wanted to be invested in such

a manner that he would not lose his retirement and be forced to go back to work.

Despite these instructions,  Mr. Martin's entire retirement was invested in a Western

Reserve Life ("WRL") Variable Annuity, which purportedly is an "extremely aggressive variable

annuity portfolio that was comprised of virtually 100%  aggressive and growth stocks."

Disputed facts exist as to whether Mr. Bell and Mr. Gilland made this decision–and the decision

regarding the specific annuity subaccounts within his variable annuity–without Mr. Martin's

input, whether they informed Mr. Martin about the high-risk nature of this investment, and whether they simply told Mr. Martin that this was the best investment for him based upon his needs and retirement goals.   As the court is required to do when deciding a motion for summary judgment, the court has considered these facts in a light most favorable to Mr. Martin and has assumed that Messrs. Bell and Gilland made the decision themselves and did not inform Mr. Martin about the alleged risky nature of such an investment.

At some point after June 30, 2000, Mr. Martin received his first annuity statement showing that his account had decreased in value by nearly $100,000.  Mr. Martin understood at that time that the loss his account had sustained was substantial and was contrary to his wishes and expectations.  Mr. Martin immediately raised his concerns about the declining value of his account with both Mr. Bell and Mr. Gilland, as well as with his son Jared.   Mr. Martin claims, however, that he did not change the allocation of his subaccounts based upon the advice and recommendations he received from Messrs. Bell and Gilland.   While the content of the specific discussions is disputed, Mr. Martin claims that they told him that his losses were due to a general market decline, that they had placed him in a good program, and that he should "stay the course."  In addition, they purportedly stated that if he changed his investments, he would cement his losses, and he would be charged substantial fees and penalties.

Later, in April 2001, Mr. Martin received a letter from the President of WRL, encouraging policy holders to remain patient and not to abandon their WRL policies.   According to Mr. Martin, based upon this letter and the fact that Messrs. Bell and Gilland had not recommended that he change or reallocate his investments, he continued to stay the course.

3

Mr. Martin contends that it was not until on or after September 2, 2002, over two years after he received his first account statement, when his son took over his account and was able to examine its content that Mr. Martin discovered that Mr. Bell and Mr. Gilland had invested his retirement funds in a manner that was against his wishes and in a manner entirely unsuitable for a retire individual with his financial resources and retirement goals.   At that time, Mr. Martin did not change the allocation of his subaccounts based on the advice of his son, who had concluded that the damage to his retirement account had already been done and that he had already lost over $500,000.   His son told him that his only chance of extending his retirement more than three years was to leave his remaining retirement funds in these accounts.

Mr. Martin filed a written complaint against Defendants with WRL's compliance department.   On January 5, 2004, WRL responded to the complaint, refusing to take any action against Defendants.  Accordingly, on September 2, 2004, Mr. Martin filed the instant lawsuit against Defendants.

## DISCUSSION

Defendant Bell has moved for summary judgment (and all the other Defendants have joined in), arguing that all of Mr. Martin's claims are time-barred under the applicable statutes of limitations.[1]   Defendants contend that Mr. Martin knew or should have known of his alleged causes of action by no later than June 30, 2000.  Mr. Martin, however, did not bring this action until September 2, 2004–four years and seven months after he rolled over his retirement monies

---

[1]   As to Defendants' Motion to Strike the Affidavit of Mr. Martin, the court need not decide the motion because the court has not relied on the affidavit in deciding the motion for summary judgment.

into his variable annuity and four years and two months after he received his first annuity

statement–well past the limitations period for each claim, according to Defendants.

Mr. Martin, on the other hand, argues that the relevant inquiry is not to determine when

he first learned that his investments had lost money, but rather, to determine when he first

learned that Messrs. Bell and Gilland had invested his funds in investments that were unsuitable

for his financial needs, risk tolerance, and retirement objectives.  He claims that he did not learn

of the aggressive and unsuitable nature of his investments until September 2, 2002, and thus, his

claims are timely.   At the very least, he claims, a jury must determine when the statute of

limitations began to run.

Under Utah law, the statute of limitations begins to run when the last event that will

complete the cause of action occurs.  *Beckton Dickinson and Co. v. Reese*, 668 P.2d 1254, 1257

(Utah 1983);  *Anderson v. Dean Witter Reynolds*, 920 P.2d 575, 578 (Utah Ct. App. 1996).

Simple ignorance of the cause of action will not prevent the running of the limitations period.

*Id*. at 578.   Where a fiduciary relationship is alleged, the statute of limitations does not accrue

until the plaintiff discovers, or in the exercise of reasonable care should discover, that there is a

wrong to be complained of.  *Macris v. Sculptured Software, Inc.*, 24 P.3d 984, 990 (Utah 2001)

(citations omitted).   It is not necessary, however, for the plaintiff to know the full extent of his

injury for the statute of limitations to begin running.  *Magoc v. Hooker*, 796 F.2d 377, 379 (10th

Cir. 1986).   Whether a plaintiff discovered or should have discovered facts forming the basis of

claims "is a classic factual dispute that should be resolved by the finder of fact."  *Andreini v.

Hultgren*, 860 P.2d 916, 9191 (Utah 1993).

The court does not agree with Defendants that, as a matter of law, the limitations periods began to run on June 30, 2000.   The evidence is undisputed that the first account statement actually included transactions from June 30, 2000 and was received by Mr. Martin sometime after that date–presumably sometime in early to mid-July.   The court also does not agree with Defendants that, as a matter of law, the limitations period necessarily began to run on the day Mr. Martin received the account statement.   The court finds, however, that no reasonable jury could conclude that Mr. Martin was not on notice of his potential claims until September 2, 2002–over two years after he received his first account statement.    Thus, the determination regarding whether Mr. Martin's claims are time-barred requires an analysis of the relevant statutes of limitations.

First, in Counts 1-4, Mr. Martin has alleged violation of state and federal securities laws. The statute of limitations for these claims is two years from the date of actual or constructive notice of the claim.  These claims are time-barred because, as the court noted above, no reasonable jury could conclude that Mr. Martin was not on actual or constructive notice of his potential claim until September 2, 2002.   These claims, then, are dismissed.

Next, in Count 5, Mr. Martin contends that the Individual Defendants violated NASD suitability rules, which has a four year statute of limitations.   Defendants argue that not only is the claim time-barred, but also, there is no private cause of action enforce the NASD Rules against the Defendants.  *Reed v. Bear, Stearns & Co., Inc*., 698 F. Supp. 835, 838 (D. Kan. 1988) (citing numerous cases standing for the proposition that no private cause of action exists for violations of  NYSE and NASD rules).   Mr. Martin has not argued otherwise in his response

memorandum.  Thus, Count 5 is dismissed.

In Count 6, Mr. Martin asserts a common law fraud claim, which has a three-year statute of limitations.   Utah Code Ann.  § 78-12-26(3).  A fraud claim must be brought within three years, "except that the cause of action in such case does not accrue until the discovery by the aggrieved party of the facts constituting the fraud or mistake."  *Id.*  A plaintiff, however, is deemed to have discovered his action when he has actual knowledge of the fraud "or by reasonable diligence and inquiry should know, the relevant facts of the fraud perpetrated against him."  *Colosimo v. Roman Catholic Bishop of Salt Lake City*, 156 P.3d 806, 811 (Utah 2007). The Utah Supreme Court has "particularly emphasized the importance of the diligence requirement, stating that '[a] party who has opportunity of knowing the facts constituting the alleged fraud cannot be inactive and afterwards allege a want of knowledge'" and that "'[a] party is required to make inquiry if his findings would prompt further investigation.'"  *Id.* (quoting *Baldwin Burton*, 850 P.2d 1188, 1196 (Utah 1993)).   "In other words, if a party has knowledge of some underlying facts, then that party must reasonably investigate potential causes of action because the limitations period will run."  *Id.*

To permit this claim to stand, the court would have to find that a reasonably jury could conclude that Mr. Martin did not have sufficient knowledge to trigger a duty to inquire into potential claims prior to September 2001 (three years prior to the filing of the lawsuit), which was over a year after receiving his first account statement.   While the court disagrees with Defendants that the limitations period necessarily began to run on June 30, 2000–or the day on which Mr. Martin received his first statement), the court finds that no reasonable jury could find

that it was reasonable to wait over a year to begin a further investigation.  Thus, Mr. Martin's fraud claim is dismissed.

Finally, in Counts 7 and 8, Mr. Martin alleges a claim for professional negligence, and a claim for breach of fiduciary duty, respectively, which both have a four-year statute of limitations.  Utah Code Ann. § 78-12-25.   Defendants argue that the limitations period therefore expired on June 30, 2004, and that both of these claims are time-barred.

As stated above, however, "[i]n certain instances, however, the discovery rule tolls the limitations period until facts forming the basis for the cause of action are discovered."  *Spears v. Warr,* 44 P.3d 742 (Utah 2002).   The "equitable discovery rule may operate to toll an otherwise fixed statute of limitations period" in two situations: (1) where a plaintiff does not become aware of the cause of action because of the defendant's concealment or misleading conduct, and  (2) where the case presents exceptional circumstances and the application of the general rule would be irrational or unjust, regardless of any showing that the defendant has prevented the discovery of the cause of action."  *Mardanlou v. Ghaffarian* 135 P.3d 904, 910 (Utah Ct. App. 2006) (quoting  *Russell Packard Dev., Inc.,* 108 P.3d 741 (Utah 2005) (internal quotations and citation omitted)).

The court finds that a reasonable jury could conclude that due to Defendants' alleged misleading conduct or because of the exceptional circumstances involved in this case (i.e., the significant reliance placed on Defendant's professional advice and Mr. Martin's alleged unfamiliarity with the stock market), Plaintiff did not become aware of his cause of action until sometime after September 2, 2000–shortly after he received his first account statement.

Accordingly, a genuine issue of material fact exists as to when Mr. Martin discovered or should have discovered facts forming the basis of these claims.

### CONCLUSION

Accordingly, for the foregoing reasons, IT IS HEREBY ORDERED that Mr. Gilland's Motion for Summary Judgment [docket #65] is GRANTED in part and DENIED in part. Because the remaining Defendants had joined in the Motion for Summary Judgment [docket # 76], their motion is also GRANTED in part and DENIED in part. The Motion to Strike the Affidavit of Mr. Martin [docket ## 80, 82] is denied as MOOT.

In addition, because all of Mr. Martin's federal claims have been dismissed and diversity jurisdiction does not exist in this action, as Defendants Mr. Bell and Mr. Gilland are both residents of Utah, this court declines to exercise supplemental jurisdiction over the two remaining state law claims (the Seventh and Eighth Causes of Action).[2] Thus, these two causes of action are dismissed without prejudice and may be filed in state court.

DATED this 27th day of September, 2007.

BY THE COURT:

DALE A. KIMBALL
United States District Judge

---

[2] Plaintiff has asserted a Ninth Cause of Action for punitive damages, but such a cause of action does not exist; rather it is an additional remedy. *See DeBry v. Cascade Enterprises*, 879 P.2d 1353, 1359 (Utah 1994).